2024 IL App (1st) 24-0550-U
Order filed: May 16, 2024

FIRST DISTRICT
FOURTH DIVISION

No. 1-24-0550B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24600068601 |
| | ) | |
| ORONDE HARDY, | ) | Honorable |
| | ) | Ruth Gudino, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justice Hoffman concurred in the judgment.
Justice Ocasio specially concurred.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's order that defendant should be detained pretrial over his argument that the State did not establish by clear and convincing evidence that no condition or combination of conditions would mitigate the threat to safety which he posed.

¶ 2    Defendant, Oronde Hardy, appeals from an order granting the State's petition to deny his pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1] On appeal, defendant argues that the circuit

_____

[1] While commonly known by these names, neither the Illinois Compiled Statutes nor the forgoing public act refer to the Act as the "Safety, Accountability, Fairness and Equity-Today" Act, *i.e.*, SAFE-T

court erred in its determination that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, or defendant's willful flight. For the following reasons, we affirm.

¶ 3     Defendant was arrested on February 26, 2024 and charged, by felony complaints, with first degree murder and attempted first degree murder. The complaints alleged that defendant committed the offense of first degree murder when he "without lawful justification, stabbed D.S. with a knife, knowing said act would cause the death of D.S. thereby causing the death of D.S." and the offense of attempt first degree murder when he "without lawful justification, stabbed V.S. with a knife, knowing said act would cause death or great bodily harm to V.S., thereby causing great bodily harm to V.S."

¶ 4     On February 29, 2024, the State filed a verified petition to deny defendant pretrial release, pursuant to sections 5/110-2, and 6.1(a)(1.5) of the Code. 725 ILCS 5/110-2, 6.1(a)(1.5) (West 2022). Therein, the State generally alleged that the defendant is charged with a detainable offense—first degree murder—and that defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, and that no less restrictive conditions would avoid that threat.[2]

¶ 5     The circuit court held a hearing on the State's petition on March 1, 2024.

Act, or the "Pretrial Fairness Act." See *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1. Certain provisions of the legislation in question were amended by Pub. Act 102-1104 (eff. Jan. 1, 2023). See *Rowe*, 2023 IL 129248, ¶ 4. The supreme court initially stayed the implementation of this legislation but vacated that stay effective September 18, 2023. *Id.* ¶ 52.

[2] As to the specific facts of the incident, the State directed to "SEE ATTACHED ADDENDUM." The record on appeal does not contain an addendum.

¶ 6    The State proffered that on February 26, 2024 around 3:52 p.m. at a public park located at east 15th Street and Hanover in Chicago Heights, Cook County, Illinois, the victims, D.S., a 13-year-old male, and his brother, V.S., 15 years old, (collectively, victims) were at the park with their siblings, Witness 1, a 21 year-old female; Witness 2, a 12-year-old male; and Witness 3, an 8 year-old male. Defendant, 53 years old, was also at the park with his wife and three minor children. The victims were on a swing set and Witnesses 1, 2, and 3 were under a covered pavilion. Witness 1 observed defendant staring at the victims and called the victims over to her. As the victims walked toward the pavilion, defendant followed.

¶ 7    Witness 1 verbally confronted defendant about staring at the victims and "mean mugging" her and her brothers. Defendant responded by stating that he would "kick their a**" and called Witness 1 a "fat b***." Thereafter, the victims engaged in a verbal argument with defendant. Witness 1 put her hands in front of the victims to pull them back from advancing toward defendant. Witness 1 looked at the individual who she believed was defendant's wife to ask for help.

¶ 8    Defendant struck Witness 1 in her left shoulder area. D.S. and then V.S. punched defendant in the face. Defendant pulled out a switchblade knife from his pocket and stabbed D.S. once in the upper left arm. D.S. punched defendant with his right arm. V.S. struck defendant, knocking defendant to the ground, and then got on top of defendant. Defendant stabbed V.S. at least once in the back. V.S. stood up and attempted to run away from defendant. Defendant chased V.S. with the knife in hand, which was captured on a Ring camera from across the street.

¶ 9    Thereafter, "[d]efendant catches up to [D.S.], and defendant is holding [V.S.] down when Witness 1 approaches and takes out a box cutter and runs up to the defendant and stabs the defendant in the back repeatedly to get the defendant off of [V.S.]." Defendant got off of V.S. and

walked toward his vehicle with his wife and three children. They drove off and left the park without rendering any type of aid.

¶ 10    Police officers and emergency medical services (EMS) arrived at the park. D.S. was found rolling around on the ground and was generally unresponsive to questions from officers and EMS. The victims were transported to the hospital by EMS. D.S. died as a result of the injuries; the stab wound struck an artery in his shoulder. An autopsy ruled a single stab wound as the cause of death, and the manner homicide. V.S. was treated for a stab wound to the back and released.

¶ 11    Witness 4, unrelated to the individuals involved, observed the altercation from inside of a car at the park. She took a picture of defendant's car and license plate as he left the park, which she provided to responding officers. Witness 5, also unrelated, lived in a home across the street from the park and observed the altercation. Witness 5 gave a description of defendant and his vehicle to responding officers. Witnesses 4 and 5 described defendant as the aggressor and that he stabbed the minors.

¶ 12    That same day, officers located defendant at a motel in Monee, Illinois and placed him into custody. After the officers gave defendant *Miranda* warnings, defendant made statements in which he claimed he was acting in self-defense, but also admitted that he referred to Witness 1 as a "fat b***." Detectives executed a search warrant on the motel room and recovered a folding pocketknife from the bathtub that appeared to have blood on it. Detectives also found what appeared to be blood in the bathtub as if someone was attempting to clean the knife.

¶ 13    Witness 1 and V.S. positively identified defendant in a photo array as the individual who stabbed her brothers. V.S. also positively identified a picture of the knife recovered from defendant's motel room. Witnesses 2 and 3 also made statements corroborating that defendant was the aggressor.

¶ 14 As to defendant's criminal background, the State proffered that, at the time of the altercation, defendant was on probation for aggravated fleeing and eluding. In 2007, defendant was convicted of forgery and sentenced to four years' imprisonment. In 2004, defendant was convicted of armed robbery without a firearm and sentenced to eight years' imprisonment. In 2001, defendant was convicted of witness intimidation and sentenced to two years' imprisonment.

¶ 15 The State argued that defendant was a danger to members of the community, including V.S. and the surviving witnesses. Defendant is a convicted felon for the violent offense of armed robbery and for intimidating a witness. The State also argued that there are no condition or combination of conditions that would mitigate the risk that defendant poses in that "[l]east restrictive conditions or combination thereof amount to nothing more than admonishments or attaching bracelets to the defendant's ankle, which he can remove without any repercussion." Further, defendant committed these acts while on probation after being admonished not to commit any additional offenses.

¶ 16 Tiffany Johnson, an individual from pretrial services spoke as to defendant's pretrial safety assessment (PSA): "New violent criminal activity flag, yes. New Criminal Activity Scale 4. Failure to Appear Scale 3. The PSA coincides with supervision Level 3." Johnson answered in the affirmative to the court's question: "And that would be maximum conditions, correct?". Johnson explained that a violent offense flag, means that defendant has a prior conviction of a violent offense. The PSA further noted that defendant was currently on probation for aggravated fleeing. In response to a question by the court, Johnson stated that defendant had a 2013 failure to appear.

¶ 17 Defense counsel began by describing the Ring camera footage, explaining that a "commotion" was captured, but that it is hard to tell exactly what is happening. Defense counsel then noted that defendant told the police officers that he was acting in self-defense. He was stabbed

in the back by Witness 1 and received treatment for stab wounds to his back and arms and injuries to his face. Further, defense counsel maintained that the witnesses' statements vary in the precise order of events that the State alleged occurred.

¶ 18 As for mitigation, defense counsel proffered that defendant, 50 years old, lived at his current address for 30 years and is a lifelong resident of Cook County. He has been married for 12 years and lives with his wife, who was eight months pregnant, and his three children, five, six, and seven years old. He graduated high school, received an associate degree, and has two jobs. He is an active member of his church.

¶ 19 Defense counsel acknowledged that the court would have concerns over the danger defendant posed but contended that electronic monitoring would be a condition that could be imposed. Defendant only had one failure to appear from 2013 for a traffic offense. At the time it was issued, he was in custody.

¶ 20 The court concluded that the State had shown by clear and convincing evidence that defendant was charged with the detainable offenses of first degree murder of D.S. and attempted first degree murder of V.S. and that the proof was evident and the presumption great that defendant committed those offenses. The court explained that "defendant, while armed with a switchblade, stabbed [D.S.] in the artery, causing his death by a single stab wound, and stabbed [V.S.] in the back."

¶ 21 The circuit court next concluded that defendant posed a real and present threat to the safety of any person or persons or the community. The court found that defendant poses a threat to V.S. and the witnesses in this case. In addition to those individuals, the court found that defendant posed a risk to the park community, the neighborhood community, and the community at large in Chicago Heights. The circuit court addressed the nature and the circumstances of the offenses charged and

emphasized that defendant was the initial aggressor in a crime of violence with a weapon that occurred in a public park during the day.

¶ 22    In considering defendant's criminal background, the court compared defendant's prior conviction for aggravated fleeing and eluding to this altercation where defendant fled from the scene, provided no aid to the minors, and was later taken into custody in a motel where a knife was recovered with blood still on it. The court also addressed defendant's armed robbery conviction, noting that it was a forcible felony crime of violence, and his conviction for witness intimidation, finding that it was evidence of the fact that defendant believes that his conduct can intimidate and threaten individuals.

¶ 23    Additionally, the court explained that defendant is a "grown man, 50 years old, who chose to confront a 21-year-old female who had four minor children with her who were enjoying, I believe, a day in the park on a Monday at approximately 4:00. He chose to confront her and start an argument that led to a physical altercation. He posed a threat at that time and continued to pose a threat during the pendency of this incident." As to self-defense, the court explained that defendant admitted to calling Witness 1 a "fat b***," which the court described as an offensive and aggressive statement, which he made to a stranger in a public park.

¶ 24    Lastly, the court found that there were no conditions or combination of conditions that could mitigate the risk that defendant poses. The court discussed the facts of the incident in which defendant attempted to intimidate the victims by following them and pulling out a switchblade, leading to defendant stabbing D.S., who later died, and V.S. in the back. The court also noted that the PSA recommended maximum conditions if defendant were to be released. The court considered a number of conditions, including, release with mandatory conditions, such as stay-away/no contact and no access to dangerous weapons, and release on GPS, home curfew, and

electronic monitoring. The Court explained that GPS, electronic monitoring, and home curfew would still permit defendant to have movement and have access to the community where he is a danger. The court explained that electronic movement is monitored, but defendant is permitted two days of movement on GPS. The court further explained that movement is monitored with "an ankle bracelet that monitors with the hopes that the police will respond on time to prevent or intervene if an incident happens." The circuit court concluded that based on the facts and circumstances of this case, it was not willing to take that risk and that detainment was the only way to mitigate the real and present threat defendant posed to the individuals and community.

¶ 25    The court granted the State's petition to detain defendant pretrial and entered a written order reflecting its findings.

¶ 26    Defendant timely appealed. A supporting record and report of proceedings have been filed with this court. Defendant filed a "Notice in Lieu of Rule 604(h) Memorandum," informing this court of his intention to "stand on the notice of appeal." His notice also addresses portions of the record and cites *People v. Stock*, 2023 IL App (1st) 231753, in support his position. The State filed a memorandum under Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023).

¶ 27    Pretrial release is governed by article 110 of the Code (725 ILCS 5/110 (West 2022)), as amended by the Act. Under the Code, the requirement of posting monetary bail has been abolished in Illinois as of September 18, 2023. See 725 ILCS 5/110-1.5 (West 2022); *Rowe*, 2023 IL 129248, ¶ 52. Now, "[a]ll persons charged with an offense shall be eligible for pretrial release before conviction. It is presumed that a defendant is entitled to release on personal recognizance on the condition that the defendant attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release." 725 ILCS 5/110-2(a) (West 2022).

¶ 28    Pretrial release may only be denied in certain specific situations. 725 ILCS 5/110-6.1 (West 2022). Where—as is the case here—a defendant is charged with attempting to commit a forcible felony, and after filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community, and (3) less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-2(a), 110-6.1 West 2022). "Clear and convincing evidence is "the quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12.

¶ 29    Appeals of bail orders under Illinois Supreme Court Rule 604(c)(1) (eff. Sept. 18, 2023) have historically been reviewed using an abuse of discretion standard. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10 (citing *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9). While Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023) provides a new procedure for these types of appeals considering the changes made to the Code by the Act, "the Act neither mandates nor suggests a different standard of review." *Inman*, 2023 IL App (4th) 230864, ¶ 11. There is some debate among the appellate districts concerning the appropriate standard of review with respect to appeals under Rule 604(h). See *People v. Herrera*, 2023 IL App (1st) 231801, ¶¶ 22-24 (observing split between districts regarding abuse of discretion and manifest weight of the evidence standard under the Act); *People v. Morgan*, 2024 IL App (4th) 240103, ¶¶ 18-35 (discussing manifest weight of the evidence, abuse of discretion, and *de novo* standards of review and concluding abuse of discretion is the proper standard). While we would affirm under any of these standards, we

conclude that a circuit court's determination as to the first two propositions—whether a defendant committed a detainable offense and poses a threat—are reviewed under the manifest weight standard (*People v. Rodriquez*, 2023 IL App (3d) 230450, ¶ 8; *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12) and the trial court's determination that no condition or combination of conditions can mitigate the real and present threat posed by defendant is reviewed under an abuse of discretion standard. See *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 36 (explaining that the circuit court "must exercise a degree of discretion to determine whether any less restrictive means will mitigate the threat"); *People v. Reed*, 2023 IL (1st) 231834, ¶ 31 (explaining that the circuit court in coming to its determination is "called upon to weigh and balance a multitude of factors").

¶ 30   An abuse of discretion occurs where the court's judgment is fanciful, arbitrary, or unreasonable, or where no reasonable person would agree with the court's position. *Simmons*, 2019 IL App (1st) 191253, ¶ 9. In conducting this review, we will not substitute the circuit court's factual and credibility findings with our own. *Inman*, 2023 IL App (4th) 230864, ¶ 11. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008).

¶ 31   On appeal, defendant does not challenge the evidence that he has been charged with a detention-qualifying offense or that the proof is evident or the presumption great that he committed the offense. Defendant also does not challenge the circuit court's determination that the State met its burden of proving by clear and convincing evidence that defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community. Rather, defendant argues that the court erred in its determination that no condition or combination of conditions could

mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, or defendant's willful flight.

¶ 32    Section 110-5 of the Code outlines the factors trial courts should consider in determining conditions of pretrial release. 725 ILCS 5/110-5 (West 2022). These factors include the nature and circumstances of the offense charged, the weight of the evidence against the defendant, and the history and characteristics of the defendant, including whether defendant was on probation at the time of the arrest. *Id.* 110-5(a)(1)-(3) (West 2022).

¶ 33    Here, the State proffered that defendant was charged with first degree murder and attempted first degree murder after defendant, in the afternoon, at a Chicago Heights public park, stabbed D.S., a 13 year-old-male, in the shoulder causing his death, and V.S., a 15 year-old-male, in the back. Although defendant suffered injuries, including stab wounds, multiple witnesses identified defendant, 50 years old, as the initial aggressor. Defendant followed the victims from the swing set to the covered pavilion and called their sister a "fat b***." After a verbal altercation with the minors, the defendant pulled out a knife and the interaction became violent. After stabbing the minors, instead of offering assistance to D.S., who was rolling around on the ground, or V.S. who had also been stabbed in the back, defendant fled the park with his wife and children. Later that day, defendant was found at a motel in Monee where a knife with blood on it was recovered. At the time of this incident, defendant was on probation and had previous convictions of armed robbery, a forcible felony, and witness intimidation. The State argued that no admonishments or electronic monitoring would mitigate the risk that defendant posed to the surviving victim, witnesses, and the community as a whole.

¶ 34    In making its determination, the court discussed the facts of the incident highlighting the defendant's intimidating actions toward the victims and noted that the PSA recommended

maximum conditions if defendant were to be released. The court considered GPS, electronic monitoring, and home curfew, but found that those conditions would still allow defendant movement, which would not prevent him from committing similar crimes to individuals in the community or accessing the surviving victim or witnesses.

¶ 35    The record reflects that the circuit court properly considered the statutory factors: the nature, seriousness, and circumstances of the offense charged. In light of these statutory factors and the State's proffered evidence, we cannot find that the circuit court's determination that the State proved by clear and convincing evidence that there were no conditions or combination of conditions of pretrial release that could mitigate the real and present threat posed by defendant, was arbitrary or unreasonable.

¶ 36    Defendant, citing *People v. Stock*, 2023 IL App (1st) 231753, argues that the State was required to, but failed to proffer more than just the nature of the offense charged to support a finding that no conditions could mitigate defendant's threat. In *Stock*, the defendant was charged with aggravated battery after he discharged a gun once inside his bedroom and the bullet went through the wall of the bathroom and grazed his estranged wife. *Id.* ¶¶ 4-5. The victim had been at the home with friends to retrieve belongings. *Id*. ¶ 5. According to the defense proffer, the defendant believed the victim had left the home when he fired the weapon and the victim drove herself to the hospital for treatment after first going to a bar with friends. *Id*. ¶ 6. The State relied on its proffer as to the basic elements of the offense to support its argument that defendant should be detained. *Id.* ¶¶ 5, 17. The circuit court ordered the detention of the defendant without oral or written explanation as to its finding that there were no conditions which would mitigate the threat posed by defendant. *Id.* ¶ 8.

¶ 37 On appeal, this court found that the State failed to prove there were no conditions or combination of conditions that could mitigate the danger posed by defendant where the State offered no evidence to support that conclusion and failed to discuss any conditions. *Id.* ¶ 19. The *Stock* court reasoned that "[i]f the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release." *Id.* ¶ 18.

¶ 38 We find *Stock* distinguishable. In this case, the State presented evidence, and not just the basic elements of the offense, that showed why no less restrictive conditions would mitigate defendant's risk to the individuals and the community. After proffering evidence that defendant, the initial aggressor, stabbed D.S. and V.S., both minors, in a public park, the State presented evidence of defendant's prior criminal history, which included the fact that defendant was on probation at the time he committed the instant crime and also had a prior conviction for another forcible felony, armed robbery. Defendant's criminal background also included a conviction for witness intimidation, which is relevant here as there is a surviving victim and multiple witnesses. The circuit court considered these factors and with explanations, found that defendant, if released even on maximum conditions, would not be prevented from attempting to intimidate these witnesses or committing similar violent crimes in public places.

¶ 39 Lastly, defendant contends that the circuit court erred in ordering him detained where the circuit court erred in its determination that no condition or combination of conditions would reasonably ensure defendant's appearance at later hearings. However, the State's petition did not rely upon this alternative statutory risk factor, the State made no argument as to this factor at the hearing, and the circuit court's written order did not rely upon a finding as to this risk to justify defendant's detention. Even if the trial court had relied on the risk of defendant's willful flight

from prosecution, we need not address this issue further where the decision to detain defendant may be affirmed solely based on the risk to a person or persons or the community, as discussed above. 725 ILCS 5/110-6.1(e)(3) (West 2022) (the State must prove that "no condition or combination of conditions *** can mitigate (i) the real and present threat to the safety of any person or persons or the community ***, *or* (ii) the defendant's willful flight" (emphasis added)).

¶ 40    In summary, we find that the circuit court did not abuse its discretion in finding that the State proved by clear and convincing evidence that there are no conditions or combination of conditions which would mitigate the threat to the safety of the victim and the community and in ordering the pretrial detention of defendant.

¶ 41    For the foregoing reasons, we affirm the order of the circuit court detaining defendant and remanding him to the custody of the Cook County sheriff pending trial.

¶ 42    Affirmed.

¶ 43    JUSTICE OCASIO, specially concurring:

¶ 44    I join in the decision of the court. I write separately only to express my conviction that the standard of review should be *de novo*. See *People v. Whitaker*, 2024 IL App (1st) 232009, ¶¶ 79-138 (Ellis, J. concurring).